BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| CLAIRE RICHARDS; ALISHA CURTIN; DAKOTA ADELPHIA; MICHAEL SCHWARTZ; DARIN PRINCE; NORTH COUNTY SHOOTING CENTER, INC.; JOHN PHILLIPS; PWGG, L.P.; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; FIREARMS POLICY COALITION, INC.; and SECOND AMENDMENT FOUNDATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of California; and ALLISON MENDOZA, in her official capacity as Director of the California Department of Justice Bureau of Firearms,<br><br>*Defendants*. | Case No.: **'23CV0793 LAB  WVG**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
|---|---|

# INTRODUCTION

1.      A right delayed is a right denied. But denying access to fundamental rights is precisely what Defendants Attorney General Rob Bonta, and his Director of the California Department of Justice ("DOJ") Bureau of Firearms, Allison Mendoza, do through their enforcement of California's unconstitutional Waiting Period Laws that individually and collectively infringe upon the right to keep and bear arms.[1]

2.      Typical law-abiding individuals in California cannot lawfully acquire a firearm to exercise their constitutionally protected right to keep and bear arms without first going in-person to a federally and state-licensed firearm dealer, applying for the transfer of a firearm, and suffering at least a 10-day ban on the possession of that arm—even when the State has confirmed, often within minutes of the application, that the person is eligible to acquire firearms. Then, if the Defendants affirmatively allow the transfer, the buyer must go back to the dealership to take possession of the firearm no sooner than 10 days after submitting the application.[2] And California's firearm dealers must strictly comply with the State's regulatory scheme on pain of criminal liability and loss of their license to do business.

3.      In short, Defendants' enforcement of the Waiting Period Laws prevents law-abiding people from taking possession of lawfully acquired firearms for immediate self-defense and other lawful purposes—even after Defendants know the individual is eligible to exercise their fundamental, constitutionally protected right to

---

[1] Cal. Penal Code §§ 26815(a), 27540, and Defendants' regulations, policies, and enforcement practices implementing them are hereinafter collectively referred to as the "Waiting Period Laws" or "WPLs."

[2] The second visit to the dealer must be at least ten (10) 24-hour periods after the Defendants receive a completed application, but may not more than thirty (30) days after the process starts, or, under federal law, the background check expires, and the process must start over. *See also* JUDGMENT GRANTING PETITION FOR WRIT OF MANDATE, *Campos v. Bonta*, San Diego Super. Ct. Case No. 37-2020-0030178 (Aug. 8, 2022) (finding that Defendants' practice of delaying firearms transactions beyond the statutorily authorized period violated state law).

keep and bear arms. This relegates the right to keep and bear arms to second-class status. But nearly thirteen years ago, the Supreme Court "declared that the Second Amendment is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Silvester v. Becerra*, 138 S.Ct. 945, 952 (2018) (Thomas, J., dissenting from denial of cert.) (quoting *McDonald v. Chicago*, 561 U. S. 742, 780 (2010)) (cleaned up).

4.     And just last year, in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022) ("*Bruen*"), the Supreme Court confirmed that the "test that [it] set forth in *Heller*" was the only appropriate mode of analyzing Second Amendment challenges, and "reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S.Ct. at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)) (cleaned up).

5.     Plaintiffs wish to acquire firearms in common use for lawful purposes that are not prohibited under any of California's myriad regulations on the types and categories of weapons that may be acquired and possessed by individuals in the State. The conduct that Plaintiffs wish to engage in—acquiring firearms to keep and bear for lawful purposes including immediate self-defense—is plainly covered by the text of the Second Amendment.

6.     As explained in *Bruen*, the government bears the burden of "affirmatively prov[ing] that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127. Here, Defendants cannot possibly carry that burden. No waiting period or any analogous laws existed in the constitutionally relevant period of history. Rather, no

form of a waiting period law was enacted for any jurisdiction until 1923, well beyond the relevant time period the Supreme Court permits to be considered—after all, the law held unconstitutional in *Bruen* was enacted in 1911.

7.     Adding insult to injury, Defendants broadly discriminate against the average person by allowing *nearly two dozen categories of favored individuals* to take possession of firearms and ammunition *without* being subject to those same delays and burdens. This case is thus also brought on the premise that Defendants' enforcement of California law violates the Equal Protection Clause by discriminating among its citizens in their exercise of the fundamental right to keep and bear arms.

8.     Plaintiffs therefore bring this litigation to vindicate their rights on a simple premise: The State may not prevent a law-abiding person from taking possession of an arm after it confirms, using readily available electronic databases, that the person is not prohibited from possessing firearms.

9.     Put differently, if the Defendants query federal and state databases and return no records showing that an applicant is prohibited from possessing arms, and have no other evidence that they are disqualified from exercising their rights, they must allow a dealer to transfer possession of the arm without further delay.[3]

10.     Plaintiffs acknowledge that the relief they seek is contrary to *Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016). But *Silvester* has been abrogated, as *Bruen* expressly rejected the "two-step" approach used in *Silvester* to reject a similar challenge to California's Waiting Period laws.

11.     California's Waiting Period Laws, and Defendants' enforcement of them, are not analogous to any constitutionally relevant history and tradition of regulating firearms. Thus, the Waiting Period Laws must be declared unconstitutional and enjoined.

---

[3] Without conceding the constitutionality of such laws, Plaintiffs do not challenge in this case the federal and state statutes that prohibit certain categories of persons from acquiring firearms or the State's "point of contact" background check requirement.

1

**THE PARTIES**

2       12.    Plaintiff Claire Richards is a resident of San Diego County, California.

3   Richards is a law-abiding, responsible gun owner with a firearm registered in her name

4   in Defendants' Automated Firearms System ("AFS") and Dealer's Record of Sale

5   ("DROS") databases and is not prohibited under state or federal law from acquiring

6   or possessing firearms or ammunition. Richards holds an active license to carry a

7   concealed weapon ("CCW") issued by the San Diego County Sheriff's Department.

8   She is a member of Plaintiffs SDCGO, CGF, FPC, and SAF and a customer of the

9   Dealer Plaintiffs.

10      13.    Plaintiff Alisha Curtin is a resident of San Diego County, California.

11  Curtin is a law-abiding, responsible gun owner with a firearm registered in her name

12  in Defendants' AFS and DROS databases and is not prohibited under state or federal

13  law from acquiring or possessing firearms or ammunition. Curtin holds an active

14  CCW license issued by the San Diego County Sheriff's Department, and also

15  possesses a valid certificate of eligibility ("COE") issued by DOJ. She is a member of

16  Plaintiffs SDCGO, CGF, FPC, and SAF and a customer of the Dealer Plaintiffs.

17      14.    Plaintiff Dakota Adelphia is a law-abiding, responsible gun owner with

18  a firearm registered in her name in Defendants' AFS and DROS databases and is not

19  prohibited under state or federal law from acquiring or possessing firearms or

20  ammunition. Adelphia holds an active CCW license issued by the San Diego County

21  Sheriff's Department, and also possesses a valid COE issued by DOJ. She is a member

22  of Plaintiffs SDCGO, CGF, FPC and SAF and a customer of the Dealer Plaintiffs.

23      15.    Plaintiff Michael Schwartz is a law-abiding, responsible gun owner with

24  a firearm registered in his name in Defendants' AFS and DROS databases and is not

25  prohibited under state or federal law from acquiring or possessing firearms or

26  ammunition. Schwartz holds an active CCW license issued by the San Diego County

27  Sheriff's Department, and also possesses a valid COE issued by DOJ. He is a member

28  of Plaintiffs SDCGO, CGF, FPC and SAF and a customer of the Dealer Plaintiffs.

16.    Plaintiffs Richards, Curtin, Adelphia, and Schwartz are hereinafter collectively referred to as the "Individual Plaintiffs."

17.    Plaintiff North County Shooting Center, Inc. ("NCSC") is a California corporation, state and federally licensed firearms retailer, shooting range, and training facility in the City of San Marcos, within San Diego County.

18.    Plaintiff Darin Prince is a natural person, a citizen of the United States, and a resident of San Diego County. Plaintiff Prince is a partner of Plaintiff NCSC, a proprietor of the business, and the individual licensee associated with the dealership and range facility, including by and through the Defendants and their Bureau of Firearms.

19.    Plaintiff PWGG, L.P. ("PWG") is a California limited partnership, doing business as "Poway Weapons & Gear" and "PWG Range," and a state and federally licensed firearms retailer, shooting range, and training facility in the city of Poway, California, within San Diego County.

20.    Plaintiff John Phillips is a natural person, a citizen of the United States, and a resident of San Diego County. Plaintiff Phillips is a partner of PWG, a proprietor of the business, and the individual licensee associated with the dealership and range facility, including by and through the Defendants and their Bureau of Firearms. Plaintiff Phillips is also a trained firearms instructor.

21.    Plaintiffs Prince, Phillips, NCSC, and PWG are hereinafter collectively referred to as the "Dealer Plaintiffs." The Dealer Plaintiffs bring this action on behalf of their customers and would-be customers. *See Craig v. Boren*, 429 U.S. 190, 192–97 (1976).

22.    Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a political organization based in San Diego County, whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms, education, and advocacy on Second Amendment issues.

SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. SDCGO's members are comprised of licensed firearm dealers as well as individuals who are not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm or ammunition. SDCGO brings this action on behalf of its members and similarly situated members of the public.

23.    Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with a place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members in California, including in San Diego County. CGF's members include individuals who are not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm or ammunition, as well as licensed firearm dealers. CGF brings this action on behalf of its members and similarly situated members of the public.

24.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Clark County, Nevada. The purposes of FPC include defending and promoting the People's rights (especially but not limited to First and Second Amendment protected rights), advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members in the State of California, including in San Diego County. FPC's members and supporters include gun owners, individuals who wish to acquire firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others. FPC brings this action on behalf of its members and similarly situated members of the public.

25. Plaintiff Second Amendment Foundation ("SAF") is a non-profit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. The purposes of SAF include education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms under the Second Amendment, and the consequences of gun control. SAF's members and supporters include gun owners, individuals who wish to acquire firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others. SAF brings this action on behalf of its members and similarly situated members of the public.

26. Plaintiffs SDCGO, CGF, FPC, and SAF are hereinafter referred to as the "Institutional Plaintiffs." The Institutional Plaintiffs' members include individuals in California that, like Individual Plaintiffs, hold a COE, a CCW, and/or are otherwise known by the Defendants to have a firearm and be legally eligible to possess and acquire firearms. The Institutional Plaintiffs' members also include individuals in California who have not yet acquired a firearm but intend to purchase one.

27. Defendant Rob Bonta is the Attorney General of the State of California. Under Article 5, § 13 of the California Constitution, Attorney General Bonta is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." Defendant Bonta is the head of the California Department of Justice. DOJ's Division of Law Enforcement's Bureau of Firearms is charged with regulation and enforcement actions regarding the manufacture, sale, ownership, safety training, and transfer of firearms and ammunition. The DOJ and its Bureau of Firearms regulate and enforce state law related to the sales, transfer, possession, and ownership of firearms. The Attorney General and DOJ maintain an office in San Diego, California. Defendant Bonta is sued in his official capacity.

28.     Defendant Allison Mendoza is the Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Mendoza reports to Attorney General Bonta, and she is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations and policies regarding the manufacture, sale, ownership, safety training, and transfer of firearms and ammunition. Defendant Mendoza is sued in her official capacity.

### JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983.

30.     Venue lies in this Court under 28 U.S.C. § 1391(b)(1)–(2).

### STATEMENT OF FACTS AND ALLEGATIONS

### *The Regulatory Scheme*

31.     In California, typical law-abiding individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties.

32.     If firearms and ammunition could be purchased online in California like other constitutionally protected artifacts, such as paper, pens, ink, and technology products that facilitate speech, then individuals could simply purchase what they need and have the items delivered to their doorsteps. But people in California cannot exercise their Second Amendment right to keep and bear arms without going in person to federally and state-licensed firearm dealers and ammunition vendors that must comply with the State's regulatory scheme on pain of criminal liability and loss of their license to do business.

33.     California law provides that "[w]here neither party to [a] [firearm] transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050)." Cal. Penal Code § 27545.

34.     In processing these transactions, firearms dealers licensed by Defendants must use Defendants' Dealer's Record of Sale (DROS) DROS Entry System (DES) ("DROS DES"). DES can be accessed at https://des.doj.ca.gov. The DROS system is the computerized, point-of-sale application system firearms dealers use to submit applications to acquire firearms to the Defendants' Bureau of Firearms.

35.     California law provides that "[n]o firearm shall be delivered . . .  [w]ithin 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later." Cal. Penal Code § 26815(a).

36.     California law further provides that "[a] dealer . . . shall not deliver a firearm to a person . . . [w]ithin 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later." Cal. Penal Code § 27540(a).

37.     Violation of these restrictions subjects the violator to criminal sanction. *See* Cal. Penal Code § 19.4 ("When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor."). Further, a license to transact in firearms "is subject to forfeiture for a breach of any of the prohibitions and requirements of [Article 2, Penal Code §§ 26800 – 26915]" (with some exceptions not applicable here). Cal. Penal Code § 26800.

38.     DOJ has access to and uses multiple state and federal electronic databases to investigate an acquirers' eligibility to own a firearm.

39.     Since 1995, California law has required that the background check consist of automated analyses of multiple law enforcement databases that are continually updated. *See* Cal. Penal Code § 28220(a) (directing DOJ to "examine its

records" "to determine" whether purchaser is prohibited).[4] Any individual who wants to purchase a firearm and does not fall into one of the WPL's 18 exemptions must pass the background check to show that they do not fall into one of the prohibited classes.

40.     California law prohibits several classes of people from owning a firearm. Examples of such "prohibited persons" include individuals convicted of a felony, misdemeanor crime of domestic violence, or other violent crime. Cal. Penal Code §§ 29800, 29805, 29905. State law likewise restricts the mentally ill from possessing firearms. Cal. Welf. & Inst. Code §§ 8100–8108.

41.     Under Section 28220(f), DOJ has authority to delay a firearm transaction beyond the 10-day waiting period *only* in three limited and expressly enumerated circumstances where its background check reveals potentially disqualifying information and DOJ is "unable to ascertain" whether the purchaser is actually prohibited or ineligible before the waiting period concludes. If DOJ is "unable to ascertain the final disposition of the arrest or criminal charge, or the outcome of the mental health treatment or evaluation, or the purchaser's eligibility to purchase a firearm" within 30 days from the date of purchase, it must "immediately notify" the dealer that it can transfer the firearm. Cal. Penal Code § 28220(f)(4).

---

[4] *See Silvester v. Harris*, 41 F.Supp.3d 927, 947–52 (E.D. Cal. 2014) (summarizing the background check's various database searches). At least two additional safeguards work to prevent prohibited persons from possessing firearms. First is the Armed and Prohibited Persons System ("APPS"), "a database that cross-references persons with firearms records in the AFS, typically a DROS record, with those who have a prohibiting conviction or circumstance." *Silvester*, 41 F. Supp. 3d at 957, *see also* Cal. Penal Code §§ 30000–30015. "The purpose behind APPS is to identify prohibited persons who have firearms and to enable law enforcement to retrieve the firearms before those persons can use the firearms to harm others or themselves." *Silvester*, 41 F. Supp. 3d at 957. Second is DOJ's "Rap Back" system, which "is a notification that DOJ receives whenever someone with fingerprints on file with DOJ is the subject of a criminal justice agency record, *e.g.* a notification of a subsequent arrest record." *Id.*

42.     But upwards of 99% of all DROS applications are approved by Defendants. *Silvester*, 41 F. Supp. 3d at 953. In 2013, for example, DOJ processed 960,179 DROS applications, with only 7,371 denials. *Id.*[5] And a large percentage of approvals occur within a matter of minutes. *Id.* (finding that "approximately 20%" of applications are "auto approved").

43.     Yet even after the DOJ's systems confirm that a law-abiding firearm acquirer is eligible to possess a firearm, the acquirer must wait—and dealers must enforce and comply with—at least[6] a full ten-days before the acquirer may take possession of the gun. "If a background check is completed prior to 10 days, the firearm is not released because state law mandates a 10-day waiting period." *Id.* at 954.

44.     But for Defendants' enforcement of the Waiting Period Laws, licensed firearm dealers could transfer possession of a firearm to acquirers immediately after the Defendants electronically confirm that the acquirer is not prohibited using the DROS DES "exempt" function. Thus, no modification to the Defendants' DROS systems would be required in order to comply with an injunction prohibiting enforcement of the Waiting Period Laws as to non-prohibited individuals. Under current law, however, dealers cannot release the gun until the DROS system releases it—either because it affirmatively approved the transaction or the purchaser's status remains "undetermined" after 30 days under section 28220(f)(4).

_____

[5] On information and belief, many such denials are due to unconstitutional laws and policies restricting firearm acquisition for several historically unsupported reasons, meaning that the number of denials for constitutionally sound causes is smaller than those prohibited under the Defendants' laws and enforcement practices.

[6] *See, e.g.*, JUDGMENT GRANTING PETITION FOR WRIT OF MANDATE, *Campos v. Bonta*, San Diego Super. Ct. Case No. 37-2020-0030178 (Aug. 8, 2022) (invalidating DOJ practice of extending 10-day period).

***Impact Of Defendants' Enforcement Of Waiting Period Laws On Plaintiffs***

45.    **Individuals:** The Individual Plaintiffs have lawfully purchased a firearm within the State of California or can otherwise demonstrate proof of ownership and lawful possession of their firearms. They would like to exercise their right to acquire and take possession of firearms from a licensed dealer after submitting the transaction through the Defendants' systems which, among other things, facilitate a background check and record the items transferred, and would immediately do so as soon as Defendants' systems confirm their status as eligible to possess firearms but for Defendants' laws, policies, and enforcement practices that prevent them from taking possession of firearms until Defendants allow a transfer to occur. Defendants' enforcement of the Waiting Period Laws against the Individual Plaintiffs violates their right to keep and bear arms, and the rights of others similarly situated to them.

46.    The Waiting Period Laws infringe the Second Amendment rights of Plaintiffs and all other similarly situated Californians: They prevent the delivery of a firearm for a full ten-day period even where California's firearms databases confirm that the purchaser already owns a firearm and the purchaser has passed a background check before the end of the ten-day period.

47.    **Institutional Plaintiffs:** The Individual Plaintiffs are each members of the Institutional Plaintiffs, whose membership includes many more individuals who are similarly situated in that they have a CCW, COE, or at least one firearm in California's AFS system. The Institutional Plaintiffs' members likewise include would-be first-time purchasers who are not prohibited from purchasing firearms. Accordingly, the Institutional Plaintiffs and their members are harmed by the Waiting Period Laws.

48.    **Dealer Plaintiffs:** Plaintiffs PWG and NCSC are duly licensed firearm retailers and shooting ranges listed in the DOJ's Centralized List of Firearms Dealers. Plaintiffs PWG and NCSC have received numerous firearms and ammunition purchase applications from purchasers who are not prohibited under state or federal

law from possessing, receiving, owning, or purchasing a firearm or ammunition; such applications have been duly submitted to Defendants. The information presented on those applications is accurate, legible, and complete. Defendants' laws, policies, and enforcement practices prevent Plaintiffs PWG and NCSC and their staff from immediately transferring firearms or ammunition to transferees that are legally eligible to possess and receive such constitutionally protected arms. Defendants' enforcement of the Waiting Period Laws has caused, and is causing, injury and harm to Plaintiffs PWG and NCSC (and their customers) through, for example, delayed and/or cancelled sales, delayed and/or cancelled revenues, lost goodwill with purchasers, and allocation of employee time and effort to continuously check purchasers' firearm statuses, and update/notify purchasers of their pick-up times of lawfully purchased property.

### The Right To Keep and Bear Arms

49.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests"—including the Defendants'—"the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

50.     The fundamental, individual right to keep and bear arms includes the right of individuals to acquire and take possession of firearms and ammunition for all lawful purposes.

51.     California, however, has placed unconstitutional and burdensome restrictions on access to and delivery of firearms, generally subjecting firearm acquirers (and dealers) to a minimum ten-day ban on the delivery of firearms, even if the individual is already known by the Defendants to be in possession of a firearm and not prohibited from possessing firearms.

52.     When, as here, "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S.Ct. at 2129–30 (quoting *Konigsberg*, 366 U. S. at 50 n.10) (cleaned up). The government bears the burden of identifying an historical analogue to "affirmatively prove that its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

53.     *Bruen* explained that the inquiry, cabined to the constitutionally relevant history, must show "how and why the [purportedly analogous] regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133. "In some cases," such as this one, "that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131.

54.     California's purported justifications for its Waiting Period Laws—"to allow sufficient time for law enforcement to complete a background check, and also to provide a 'cooling off' period (*i.e.*, a period in which weapons purchasers may reconsider, particularly when an impulsive act of violence or self harm may be contemplated)," *Silvester*, 843 F.3d at 823—seek to address general societal problems that have persisted since the 18th century. And California cannot carry its burden in any event, as no government (federal, state, or local) in the Nation imposed waiting periods on the purchase of firearms on *any* firearms acquirers—first-time or otherwise—in the constitutionally relevant period.

55.     California did not first impose a waiting period until 1923, when it joined a few other states in doing so. 1923 Cal. Stat. ch. 339 §§ 10-11. But legislation enacted

132 years after the Founding is irrelevant to determining the scope of the Second Amendment. Indeed, the Supreme Court in *Bruen* refused to even "address any of the 20th-century historical evidence" offered by New York and its *amici*, since it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." 142 S.Ct. at 2154 n.28.

56.   Failing *Bruen*'s historical test from the outset, California's Waiting Period Laws must be declared unconstitutional and enjoined.

### *California Law Exempts Several Favored Classes From The Waiting Period*

57.   At the same time California law imposes unconstitutional and unnecessary restraints on the Second Amendment rights of ordinary law-abiding Californians, it carves out numerous exceptions to their waiting period laws for certain favored classes. To name just a few, destructive device collectors, movie prop houses, auction purchasers, and consultants-evaluators are all granted instant access to the firearms and ammunition they seek, while Plaintiffs and the law-abiding general public are sidelined with delays and burdens. Cal. Penal Code §§ 26950, *et seq.*; 27650, *et seq.*

58.   California Penal Code § 26950 also creates what is routinely referred to as "the Hollywood exception"—specifically, an "entertainment firearms permit," which "authorizes the permitholder to possess firearms loaned to the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event." The holder of an entertainment firearms permit is not subject to the 10-day waiting period, among other regulations.

59.   Plaintiffs thus challenge the following exemptions for violating the Fourteenth Amendment's Equal Protection Clause:

      a.   Certain law enforcement transactions (Cal. Penal Code §§ 26950, 27050, 27055, 27060, 27065 (exempting § 26815); §§ 27600, 27605, 27610, 27615, and 27650 (exempting § 27540));

    b.  Short barrel rifle and short barrel shotgun permitees (§§ 26965 and 21740 (exempts from § 26815); §§ 27665 and 27740 (exempts from § 27540));

    c.  "Assault weapons" permitees (§ 21740 (exempts from § 26815); §27740 (exempts from § 27540));

    d.  "Machinegun" permitees (§§ 26965 and 27140 (exempts from § 26815); §§ 27665 and 27740 (exempts from § 27540));

    e.  "Machinegun" licensees (§ 26965 (exempts from § 26815); § 27665 (exempts from § 27540));

    f.  "Destructive device" permitees (§ 26965 (exempts from § 26815); § 27665 (exempts from § 27540);

    g.  Out of state sales (§ 27115 (exempts from § 26815) and § 27715 (exempts from § 27540);

    h.  Loans of firearms for use as props (§ 27000 (exempts from § 26815); § 27745 (exempts from § 27540);

    i.  Loans of firearms to consultants or evaluators (§ 27005 (exempts from § 26815); § 27750 (exempts from § 27540)); and,

    j.  Transactions involving cane guns, firearms that are not immediately recognizable as firearms, undetectable firearms, wallet guns, unconventional pistols, and zip guns (§ 21740 (exempts from § 26815); § 27740 (exempts from § 27540).

## <u>COUNT I</u>

### 42 U.S.C. §1983

### RIGHT TO KEEP AND BEAR ARMS

### U.S. CONST., AMENDS. II AND XIV

60.   Paragraphs 1 through 59 are incorporated as though fully stated herein.

61.   The Second Amendment, which applies against Defendants by operation of the Fourteenth Amendment, *McDonald*, 561 U.S. 742, secures the right to keep and

bear arms for all lawful purposes, including for the purpose of immediate self-defense. *Heller*, 554 U.S. at 635.

62.    "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S.Ct. at 2129–30 (quoting *Konigsberg*, 366 U. S. at 50 n.10) (cleaned up).

63.    The conduct that Individual Plaintiffs, Institutional Plaintiffs' members, Dealer Plaintiffs' customers and would-be customers, and similarly situated members of the public wish to engage in—acquiring arms to keep and bear for lawful purposes including but not limited to immediate self-defense—is covered by the Second Amendment's plain text.

64.    California Penal Code sections 26815 and 27540, and Defendants' regulations, policies, and enforcement practices applying their Waiting Period Laws, impose at least a ten-day ban, as well as other burdens and costs, on the possession of constitutionally protected arms by a legally eligible individual under pain of criminal and other penalties.

65.    Defendants' Waiting Period Laws individually and collectively prevent, substantially interfere with, inhibit access to, and infringe upon Plaintiffs' right (and the rights of Institutional Plaintiffs' members) to keep and bear arms for lawful purposes.

66.    Dealer Plaintiffs NCSC and PWG have a corresponding interest in defending and promoting the rights of the dealerships' patrons and would-be patrons on their behalf. Dealer Plaintiffs are subject to Defendants' laws, policies, and enforcement practices, which include serious civil and criminal penalties, as well as the loss of their dealership, for violations thereof.

67.     Under *Bruen*, Defendants must affirmatively prove that their firearms regulations challenged herein are "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127. But this they cannot do because no analogous waiting period laws existed in the constitutionally relevant period. Rather, waiting periods did not appear for any jurisdiction until 1923.

68.     Because Defendants' Waiting Period Laws, regulations, and enforcement practices violate the right to keep and bear arms, they must therefore be declared unconstitutional and enjoined.

69.     Individual Plaintiffs desire and intend to apply for the transfer of a firearm and to take possession of it as soon as they can be electronically confirmed to not be prohibited from possessing firearms, and would do so, but for the Defendants' enforcement of the Waiting Period Laws and the risk of criminal and other penalties.

70.     Institutional Plaintiffs' law-abiding members in California desire and intend to apply for the transfer of a firearm and to take possession of it as soon as they can be electronically confirmed to not be prohibited from possessing firearms, and would do so, but for the Defendants' enforcement of the Waiting Period Laws and the risk of criminal and other penalties.

71.     Dealer Plaintiffs' law-abiding customers and would-be customers in California desire and intend to apply for the transfer of a firearm and to take possession of it as soon as they can be electronically confirmed to not be prohibited from possessing firearms, and would do so, but for the Defendants' enforcement of the Waiting Period Laws and the risk of criminal and other penalties.

72.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law. Individual Plaintiffs, Institutional Plaintiffs' members, and Dealer Plaintiffs' customers and would-be customers have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their fundamental, constitutionally protected right to keep and bear arms.

73.     Plaintiffs are therefore entitled to declaratory and injunctive relief.

**COUNT II**

**42 U.S.C. §1983**

**EQUAL PROTECTION**

**U.S. CONST., AMEND. XIV**

74.     Paragraphs 1 through 59 are incorporated as though fully stated herein.

75.     Defendants' enforcement of California Penal Code sections 26815 and 27540—and the numerous exceptions to them in California Penal Code sections identified in paragraph 59, *supra*—violates Plaintiffs' right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution, in that California law favors the classes of people enumerated above by not subjecting them to the same waiting-period laws applicable to ordinary citizens.

76.     When, as here, "a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (citing cases); *Hoffman v. United States*, 767 F. 2d 1431, 1434–35 (9th Cir. 1985) ("[s]trict scrutiny is applied when the classification involves . . . categorizations impinging upon a fundamental right") (citing cases).

77.     Defendants cannot possibly justify the distinctions favoring certain classes of citizens under strict scrutiny. California's vast exemptions allow certain favored classes of firearm purchasers to bypass the Waiting Period Laws. These not only include individuals licensed to possess "assault weapons," "machine guns," and "destructive devices," but movie prop houses and "consultants and evaluators." There is no justification to treat these broad classes of purchasers differently than Plaintiffs with respect to the Waiting Period Laws. The lack of tailoring and breadth of classifications is fatal to the challenged exemptions to the Waiting Period Laws.

78.     42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law. Individual Plaintiffs, Institutional Plaintiffs' members, and Dealer Plaintiffs' customers and would-be customers have suffered—and continue to suffer—from an unlawful and irreparable deprivation of their fundamental, constitutionally protected right to equal protection of the law.

79.     Plaintiffs are therefore entitled to declaratory and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor against Defendants as follows:

1.     A declaratory judgment that Defendants' enforcement of California's Waiting Period Laws after such time that the Defendants timely confirm a firearm transferee is not prohibited from possessing firearms violates the right to keep and bear arms protected under the Second and Fourteenth Amendments to the United States Constitution;

2.     A declaratory judgment that Defendants' enforcement of California's Waiting Period Laws to typical law-abiding individuals, while also failing to enforce those same Waiting Period Laws against the classes favored by the statutory exceptions to them, violates the right to equal protection of the law secured by the Fourteenth Amendment to the United States Constitution;

3.     A preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, and those who gain knowledge of the injunction order or know of the existence of the injunction order, from implementing or enforcing California's Waiting Period Laws after such time that the Defendants timely confirm a firearm transferee is not prohibited from possessing firearms;

4.     Attorney fees and costs pursuant to 42 U.S.C. section 1988; and,

5.     All other relief the Court deems necessary, just, or appropriate.

1

2    Dated:  May 1, 2023                    BENBROOK LAW GROUP, PC

3

4                                           By _____

5                                              BRADLEY A. BENBROOK
                                               Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28