ROB BONTA
Attorney General of California
MARK R. BECKINGTON
PAUL STEIN
Supervising Deputy Attorneys General
ROBERT L. MEYERHOFF
SEBASTIAN BRADY
Deputy Attorneys General
State Bar No. 330904
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3592
  Fax:  (415) 703-5480
  E-mail:  Sebastian.Brady@doj.ca.gov
*Attorneys for Defendants Rob Bonta, in his official capacity as Attorney General of the State of California, and Defendant Allison Mendoza, in her official capacity as Director of the Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CLAIRE RICHARDS, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF CALIFORNIA, ET AL.,**<br><br>Defendants. | 3:23-cv-00793-AGS (AHG)<br><br>**DECLARATION OF RACHEL LIN IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        November 15, 2024<br>Time:       2:00 p.m.<br>Judge:      Hon. Andrew G. Schopler<br>Action Filed:  May 1, 2023 |

**DECLARATION OF RACHEL LIN**

I, RACHEL LIN, declare:

1. I am a supervisory manager in the California Department of Justice's (Department) Division of Law Enforcement, specifically the Eligibility Clearance Unit (ECU) in the Bureau of Firearms (Bureau).  I make this declaration of my own

1

personal knowledge and experience and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I have worked as a supervisory manager with the Bureau for approximately three years. I started working at the Department 19 years ago and approximately nine of those years have been at the Bureau. The Bureau serves the people of California through education, regulation, and enforcement actions regarding the manufacture, sale, ownership, safety training, and transfer of firearms.

3. I oversee two teams of analysts in the ECU. The ECU processes the background checks for firearm purchases made in California as required under Penal Code section 28220 and processes the background checks for ammunition purchases made in California as required under Penal Code section 30370, subdivision (c). In addition to managing two teams of analysts, I personally conduct background checks for firearm and ammunition purchases as well.

4. A California firearms background check begins when a California firearms dealer electronically submits to the Department a Dealer Record of Sale (DROS) through the DROS Entry System (DES). The DROS contains information about the prospective purchaser, the firearm to be purchased, and the firearms dealer. The DROS is electronically sent to the Department for review. The DROS System is the computer application Bureau analysts use to view each DROS and enter the determination (*e.g.*, approved or denied) for each DROS submitted to the Bureau through DES.

5. As described in more detail below, the DROS process can result in a fully automated review or a manual review by a Crime Analyst I (Analyst) on the Eligibility Clearance Team within the ECU. The fully automated review will occur if the DROS applicant's information matches a record in the California Department of Motor Vehicles (DMV) database and their ID is valid, and if they do not match against any state or federal databases, or if they match only on specific "APP

ONLY" records.[1]  This ultimately results in an automatic approval within minutes and without an Analyst's manual review.  However, if there is a matching record in one of the state or federal databases, or if there is a match on particular sections of an "APP ONLY" record, an Analyst must manually review the DROS.

6.  Once the DROS is received, the Department's electronic systems conduct the first step of the background check process.  That first step in the process is called the Basic Firearms Eligibility Check (BFEC) and is completely automated.  The BFEC includes checking the applicant information against DMV records, and sending inquiries to various state and federal electronic databases based on the purchaser's name and date of birth and compiling the responses when the date of birth and name results in an exact or close match in those databases.

7.  When a DROS is submitted in DES, DES automatically notes the DROS as "pending," and the dealer will see that the DROS status is "pending" in DES as well.

8.  Initially, the Department's electronic systems verify the prospective purchaser's identification information on the DROS against the DMV database. The purchaser's information is then queried against various California databases, including (1) the Department's Automated Criminal History System, a database containing criminal history information reported to the Department by criminal justice agencies in California; (2) the Wanted Persons System database; (3) the California Restraining and Protective Order System database, and (4) the Mental Health Firearms Prohibition System database.

9.  Subsequently, the prospective purchaser's information is queried against various federal databases, including (1) the National Instant Criminal Background Check System database; (2) the Interstate Identification Index (III) database; (3) the National Crime Information Center database; and, if applicable,

---

[1] "APP ONLY" records contain entries for employment or permits only and do not include any criminal information or entries.

(4) the Immigration and Customs Enforcement database.

10. If the prospective purchaser's information "hits" or matches (either the exact name and date of birth or a close variation of the name and date of birth) to any records found in any of the state or federal databases, the information is compiled and a BFEC is generated within the DROS queue for an Analyst to review in order to make a determination on the purchaser's eligibility to own, possess or purchase the firearm.

11. If a DROS clears all of these state and federal databases without any "hits" or matches, then the DROS is "auto approved" and is not put into any queue for an Analyst to manually review. Currently, on average, approximately 15 percent of all DROSs are auto-approved and do not require manual review by an Analyst.

12. Once an auto approval occurs, the dealer is notified of the approval after ten 24-hour periods have passed from the submission of the initial DROS application. Within the DES, for an auto-approved DROS, the dealer does not have the ability to mark the firearm as "Delivered" until ten 24-hour periods from the submission date, unless the DROS applicant is exempt from the 10-day waiting period.

13. Most DROSs—around 85 percent right now—require a manual review by an Analyst. During this manual review, the DROS stays in "pending" status in DES. The DROS status will not change until the Analyst has made a determination by manually selecting the appropriate determination in the DROS System. An Analyst will change the status in the DROS System when the DROS must be "delayed" under Penal Code section 28220, subdivision (g), or if the DROS is "approved" or "denied."

14. When a manual review is required, the DROS System will require Analysts to review the oldest DROS applications first. The Bureau's objective is to review DROSs within the statutory ten-day waiting period or, where additional time is needed for research in order to make a determination, to "delay" the transactions

under section 28220, subdivision (g) before the ten-day waiting period has expired. The Bureau closely monitors all DROSs in the queue to ensure proper personnel resources are available to process all transactions in a timely manner.

15. The amount of time it takes an Analyst to process a queued DROS depends upon the size, complexity and the completeness of the records involved, and the number of databases for which there have been hits. In addition to reviewing the records to determine if a firearms prohibition under California law applies, an Analyst must also review the records to determine if a firearms prohibition under federal law applies. This is because California is a "full point of contact" state for the purposes of federal firearms prohibitions, which means the state will conduct firearms background checks for all firearm purchases on behalf of the Federal Bureau of Investigation. Additionally, an Analyst may need to consult other states' records if federal databases checked during the BFEC show the DROS applicant was arrested or convicted of a possibly prohibiting crime in another state that would prohibit them federally or in California. Analysts often need to check military, mental health, and immigration records to determine if the DROS applicant is prohibited. These factors add additional layers of complexity and more time to the Analyst review.

16. If the records matched during the BFEC clearly indicate the DROS applicant is not prohibited from purchasing or possessing a firearm, the Analyst will approve the DROS. Conversely, if the records matched during the BFEC clearly indicate the DROS applicant is prohibited from purchasing or possessing a firearm, and no further research is needed, the Analyst will deny the DROS.

17. However, if there is partial information in the records indicating that the DROS applicant could be prohibited from purchasing or possessing a firearm under state or federal law, the Analyst must verify through further research whether the DROS applicant is actually prohibited. As explained further below, the Analyst may exceed the ten-day waiting period to conduct additional research, but up until

only 30 days after the DROS application was submitted pursuant to Penal Code section 28220, subdivision (g).

18. For example, Analysts may have to obtain or confirm an arrest or court disposition as part of the process of verifying prohibiting information. In cases in which an arrest record contains no disposition information, the Analyst must obtain a final disposition on that arrest record to determine whether the person is actually prohibited. Without disposition information, Analysts cannot determine whether an individual with an arrest record for a criminal charge that could be a prohibition under state or federal law is eligible to own and possess a firearm because there generally must be a conviction for there to be a prohibition. If there is an "open" disposition, a disposition must be obtained, which could mean telephoning, faxing, or directly accessing the databases of a local law enforcement agency, district attorney, or court to try to find out the disposition (for example, a conviction or a dismissal). Disposition records could be lost, missing, or purged.

19. In addition to obtaining and confirming in-state records, Analysts routinely "chase down" out-of-state dispositions. The federal Interstate Identification Index (III) database, which contains criminal history information from other states, often does not contain complete and accurate records of out-of-state criminal convictions. To obtain the disposition information, analysts may need to call or fax courts of other states, federal courts, or agencies in other states that serve as points of contact. Analysts often wait days or weeks for a response and further information, if any. Obtaining the necessary disposition information from either in-state or out-of-state courts can be a lengthy process and often requires multiple attempts to obtain a response.

20. If the records found during the BFEC indicate the DROS applicant may have a mental health adjudication, involuntary mental health hold, or other mental health issues that may lead to a firearms prohibition, the Analyst must gather additional information. Mental health facilities often create their records

6

based on information from the patients, who are not always able or willing to provide accurate personal information.  As such, the Bureau has a dedicated unit to contact the mental health facility to get additional information (such as a correct name or date of birth) if needed to help confirm whether the DROS applicant is prohibited.

21. When Analysts conduct a manual DROS review, the final result will be one of three determinations:  approved, denied, or undetermined.

22. If a DROS is not auto approved and needs a manual review, a DROS may be temporarily marked as "delayed" for up to 30 days from submission pursuant to Penal Code section 28220, subdivision (g), in order for the Analyst to further investigate whether the DROS applicant is prohibited from possessing a firearm.  When the DROS is marked "delayed," the Bureau mails a copy of the notification to the DROS applicant stating that the DROS is delayed and explaining the process by which the DROS applicant may obtain a copy of the criminal or mental health record that the Department has on file.  At the same time the Analyst manually marks the DROS as "delayed" within the DROS System, which then updates DES with the "delayed" status.  In DES, the dealer receives a notice that the DROS has been placed on delay and not to release the firearm.  The dealer will not be able to access any transactions until the dealer views and acknowledges the notice.  While the DROS is on delay and after the dealer acknowledges the notice, if the dealer searches the DROS in the DES it will show as delayed.

23. When the Bureau is unable to ascertain the DROS applicant's eligibility to purchase or possess a firearm within 30 days of DROS submission, the DROS will result in an "undetermined" determination pursuant to Penal Code section 28220, subdivision (g)(4).  In such a case, the dealer has the discretion to either refuse or permit the sale or transfer of the firearm.

I declare under penalty of perjury under the laws of the United States of

1 | America that the foregoing is true and correct.

3 |     Executed on:  August 19, 2024 in Sacramento, California.

                                                               _____
                                                                Rachel Lin