ROB BONTA
Attorney General of California
MARK R. BECKINGTON
PAUL STEIN
Supervising Deputy Attorneys General
SEBASTIAN BRADY
Deputy Attorney General
State Bar No. 330904
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 510-3592
 Fax:  (415) 703-5480
 E-mail:  Sebastian.Brady@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his*
*official capacity as Attorney General of the*
*State of California, and Defendant Allison*
*Mendoza, in her official capacity as Director*
*of the Bureau of Firearms*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CLAIRE RICHARDS, *et al.*,** | 3:23-cv-00793-AGS(AHG) |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF CALIFORNIA, *et al.*,** | Courtroom:  5C<br>Judge:      Hon. Andrew G. Schopler<br>Action Filed: May 1, 2023 |
| Defendants. | |

1

**TABLE OF CONTENTS**

2

**Page**

3   Introduction.................................................................................................... 1

4   Argument ....................................................................................................... 2

5       I.     California's Waiting Period Laws Do Not Violate the Second
           Amendment ........................................................................................ 2

6             A.    Plaintiffs Cannot Meet Their Burden at Step One of the
              *Bruen* Analysis....................................................................... 2

7                  1.    The Second Amendment's Plain Text Does Not
                     Cover the Relevant Conduct ............................................ 2

8                  2.    The Waiting Period Laws Are Presumptively
                     Constitutional Commercial Regulations ......................... 6

9

10             B.    The Waiting Period Laws Are Consistent with the
              Principles That Underpin This Nation's Tradition of
              Firearms Regulation................................................................ 8

11                  1.    The Waiting Period Laws Are Consistent with
                     Historical Licensing Laws............................................... 8

12

13                  2.    The Waiting Period Laws Are Consistent with
                     Historical Laws Preventing Impulsive Firearm
                     Violence........................................................................ 11

14       II.    The Waiting Period Laws Do Not Violate Equal Protection.............. 14

15   Conclusion ................................................................................................. 15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

CASES

4

*B & L Prods., Inc. v. Newsom*

5
    104 F.4th 108 (9th Cir. 2024)................................................2, 3, 7, 8

6

*District of Columbia v. Heller*

7
    554 U.S. 570 (2008) ...........................................................5, 8

8

*Doe v. Bonta*

9
    101 F.4th 633 (9th Cir. 2024)..................................................2

10

*Hirschfeld v. BAFTE*

11
    5 F.4th 407 (4th Cir. 2021)....................................................6

12

*Kanter v. Barr*
    919 F.3d 437 (7th Cir. 2019) ...............................................11

13

*McDonald v. City of Chicago*

14
    561 U.S. 742 (2010) ...........................................................9

15

*McRorey v. Garland*

16
    99 F.4th 831 (5th Cir. 2024)..................................................5

17

*Md. Shall Issue, Inc. v. Moore*

18
    116 F.4th 211 (4th Cir. 2024).................................................5, 8

19

*NYSRPA v. Bruen*

20
    597 U.S. 1 (2022) ........................................................*passim*

21

*Oakland Tactical Supply, LLC v. Howell Twp.*

22
    103 F.4th 1186 (6th Cir. 2024)................................................5, 6

23

*Olson v. California*
    104 F.4th 66 (9th Cir. 2024) ...............................................15

24

*Ortega v. Lujan Grisham*

25
    2024 WL 3495314 (D.N.M. July 22, 2024).......................................6

26

*Pimentel v. Dreyfus*

27
    670 F.3d 1096 (9th Cir. 2012) ...............................................14

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Rocky Mtn. Gun Owners v. Polis* (*RMGO*)
      701 F. Supp. 3d 1121 (D. Colo. 2023) ..................................................2, 6, 12, 14

4

5

*Silvester v. Harris*
      843 F.3d 816 (9th Cir. 2016) .....................................................................4, 6, 15

6

7

*United States v. Gore*
      --- F.4th ----, 2024 WL 4441472 (6th Cir. Oct. 8, 2024) .........................4, 11, 14

8

9

*United States v. Jackson*
      110 F.4th 1120 (8th Cir. 2024).............................................................................11

10

*United States v. Manney*
      114 F.4th 1048 (9th Cir. 2024).......................................................................3, 5, 7

11

12

*United States v. Perez-Garcia,*
      96 F.4th 1166 (9th Cir. 2024)......................................................................1, 10, 14

13

14

*United States v. Price*
      111 F.4th 392 (4th Cir. 2024) ................................................................................6

15

16

*United States v. Rahimi*
      144 S. Ct. 1889 (2024) ...............................................................................*passim*

17

18

*United States v. Williams*
      113 F.4th 637 (6th Cir. 2024)...............................................................................11

19

20

*Vt. Fed'n of Sportsmen's Clubs v. Birmingham* (*VFSC*)
      2024 WL 3466482 (D. Vt. July 18, 2024)...........................................2, 4, 12, 14

21

22

*Wolford v. Lopez*
      116 F.4th 959 (9th Cir. 2024)........................................................................9, 10

23

*Wright v. Incline Vill. Gen. Improvement Dist.*
      665 F.3d 1128 (9th Cir. 2011)..............................................................................15

24

25

**STATUTES**

26

Ala. Code § 13A-11-75(c) .........................................................................................8

27

28

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Penal Code
    § 26815(a)......................................................................................... 2
    § 27540(a)......................................................................................... 2

Ohio Rev. Stat. § 2923.125(D)(1) ............................................................. 8

Wash. Rev. Code § 9.41.070(1)................................................................. 8

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment .............................................................................. 13
    Second Amendment................................................................... *passim*
    Fourteenth Amendment ...................................................................... 9

iv

# INTRODUCTION

Defendants demonstrated in their cross-motion that California's Waiting Period Laws do not regulate conduct covered by the Second Amendment's plain text, and that, even if they did, they are "consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024). None of Plaintiffs' arguments undermine these conclusions.

As to the plain text, Plaintiffs continue to define the relevant course of conduct without reference to what the Waiting Period Laws actually do:  impose a brief period between an application to purchase a firearm and its acquisition.  The text of the Second Amendment says nothing about the acquisition of firearms, let alone about Plaintiffs' desired on-demand acquisition.  And even if the Waiting Period Laws implicate the ancillary right to acquire firearms, Plaintiffs still cannot meet their burden of establishing that these laws impose a meaningful constraint on this right—not on their face, and certainly not as applied to the Individual Plaintiffs and other Californians who already possess firearms.  Moreover, Plaintiffs have no real answer to the fact that the Waiting Period Laws are presumptively lawful commercial regulations.

As to the regulatory tradition, Plaintiffs ignore swathes of analogous historical regulations supporting the Waiting Period Laws.  They also ask this Court to discount other groups of analogues for reasons courts have already rejected.  And where they do directly address Defendants' historical evidence, they rely on slight (purported) differences—precisely the sort of "divide-and-conquer approach" the Ninth Circuit has rejected as "miss[ing] the forest for the trees." *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024), *en banc pet. denied*, 115 F.4th 1002. Finally, they effectively ignore the substantial evidence Defendants presented that the Waiting Period Laws address unprecedented societal concerns and dramatic technological changes, warranting a more nuanced historical analysis.

Finally, Plaintiffs mount a half-hearted defense of their equal protection claim, but do not even attempt to show they are similarly situated to individuals exempted from the Waiting Period Laws or that these exemptions lack a rational basis.

This Court should grant Defendants' cross-motion for summary judgment.

## ARGUMENT

### I. CALIFORNIA'S WAITING PERIOD LAWS DO NOT VIOLATE THE SECOND AMENDMENT

#### A. Plaintiffs Cannot Meet Their Burden at Step One of the *Bruen* Analysis

##### 1. The Second Amendment's Plain Text Does Not Cover the Relevant Conduct

At step one of the analysis prescribed by *NYSRPA v. Bruen*, 597 U.S. 1 (2022), Plaintiffs bear the burden of establishing that their proposed conduct is "cover[ed]" by "the Second Amendment's plain text." *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 117 (9th Cir. 2024) (quoting *Bruen*, 597 U.S. at 24), *en banc pet. denied* (Aug. 30, 2024). The relevant conduct here is taking possession of purchased firearms earlier than 10 days after submitting purchase applications. *See* Cal. Penal Code §§ 26815(a), 27540(a); *see also Rocky Mtn. Gun Owners v. Polis* (*RMGO*), 701 F. Supp. 3d 1121, 1132 (D. Colo. 2023) ("[I]t is clear the relevant conduct impacted by the waiting period [is] the receipt of a paid-for firearm without delay . . . ."); *Vt. Fed'n of Sportsmen's Clubs v. Birmingham* (*VFSC*), 2024 WL 3466482, at *23 (D. Vt. July 18, 2024) ("relevant conduct" is "acquiring a firearm through a commercial transaction on-demand"), *appeal filed*, No. 24-2026 (1st Cir.). Plaintiffs at times appear to agree, characterizing the Waiting Period Laws as "prohibit[ing] all firearm purchasers from taking possession of arms . . . for a full 10-day period even after the background check is complete." Pls.' Consolidated Reply Br. in Supp. of Their Mot. for Summ. J. & in Opp'n to Defs.' Mot. for Summ. J. (Pls.' Reply) at 4, ECF No. 23. That is "what the plaintiffs want[] to do and what the challenged law prevent[s] them from doing." *Doe v. Bonta*, 101 F.4th

2

633, 639 (9th Cir. 2024).  And, as explained in Defendants' cross-motion, this conduct—the acquisition of arms within 10 days of purchase application—is not covered by the plain text of the Second Amendment.  Mem. of P. & A. in Support of Defs.' Cross-Mot. for Summ. J. & in Opp'n to Pls.' Mot. for Summ. J. (Defs.' XMSJ) at 5-6, ECF No. 22-1.

At other points, Plaintiffs recharacterize the relevant conduct as "acquir[ing] firearms to keep and bear for lawful purposes including immediate self-defense." Pls.' Reply at 2.  But the Ninth Circuit has rejected attempts to "invoke the Second Amendment's constitutional protection by describing the conduct in question at such a high level of generality." *United States v. Manney*, 114 F.4th 1048, 1052 (9th Cir. 2024), *en banc pet. denied* (Sept. 25, 2024).  Instead, the relevant conduct "must be attuned to the actual activity that the Challenged Statutes regulate." *B & L Prods.*, 104 F.4th at 117 n.17.  And again, the Waiting Period Laws do not prevent anyone from "acquir[ing] firearms"; applicants may acquire firearms, just 10 days after the submission of a firearm purchase application.

Even accepting this definition of the relevant conduct, though, they still fail to meet their step one burden—a burden they do not contest falls squarely on them. *See B & L Prods.*, 104 F.4th at 117.  Where the relevant conduct involves acquiring firearms, the challenged regulation must still constitute a "meaningful constraint[] on the right to acquire firearms" to fall within the Second Amendment's plain text. Pls.' Reply at 3 (quoting *B & L Prods.*, 104 F.4th at 118).  The only argument Plaintiffs proffer to meet this burden is that "[t]he operation of the Waiting Period Laws prevent[s] people from 'keep[ing]' or 'bear[ing]' firearms until after the 10-day period is complete." *Id.*[1]

As an initial matter, this misstates the laws' effect.  The Waiting Period Laws do not prevent people, such as the Individual Plaintiffs, from keeping or bearing

---

[1] Plaintiffs do not renew their arguments about driving time and logistical burdens, which fail for the reasons Defendants explained.  Defs.' XMSJ at 7 & n.6.

3

firearms they already possess.  As Defendants explained—and as Plaintiffs ignore—each Individual Plaintiff here already possesses several firearms, and the Waiting Period Laws pose no obstacle to them keeping and bearing those firearms throughout the applicable waiting period for any future firearm purchases they may make.  Defs.' XMSJ at 8-9; *see Silvester v. Harris*, 843 F.3d 816, 832 (9th Cir. 2016) (S. Thomas, J., concurring) (recognizing that Waiting Period Laws "do[] not even necessarily prevent [plaintiffs] from exercising their right to keep and bear arms" since "they already own firearms"), *abrogated on other grounds by Bruen*, 597 U.S. 1.  As applied to them and the other individuals who already own guns, then, the Waiting Period Laws do not constitute a meaningful constraint.  *See VFSC*, 2024 WL 3466482, at *24 ("Vermont's law does not impede Plaintiffs' abilities to 'possess and carry weapons in case of confrontation,' because they can bear weapons in their possession without limitation." (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)); *see also United States v. Gore*, --- F.4th ----, 2024 WL 4441472, at *5 (6th Cir. Oct. 8, 2024) (describing law prohibiting those under felony indictment from receiving firearms as imposing "only a slight burden on the Second Amendment right" "for those who already possess one or more firearms").  This dooms both Plaintiffs' as-applied and facial challenges to the laws. *See United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024).

Even on their face, the Waiting Period Laws do not impose a meaningful constraint on the right acquire firearms.  Defs.' XMSJ at 7-9.  Plaintiffs decline to contend with *Bruen*'s recognition that wait times "deny ordinary citizens" their Second Amendment rights only when they become so "lengthy" as to be "abusive." 597 U.S. at 38 n.9.[2]  Nor do they address the Ninth Circuit's rejection of the argument that "making [purchasers] wait a short time while their application is

---

[2] *Bruen* also approved of licensing regimes far lengthier than the 10-day waiting period here.  597 U.S. at 13 n.1 (citing approvingly Ala. Code § 13A-11-75(c) (30-day period), Ohio Rev. Stat. § 2923.125(D)(1) (45-day period); and Wash. Rev. Code § 9.41.070(1) (30- or 60-day period)).

4

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

processed would come under [the] Second Amendment's plain text." *Manney*, 114 F.4th at 1052; *see also id.* (rejecting idea that "every requirement making it slightly more difficult to possess a firearm demands a full historical inquiry into its origin"); *Oakland Tactical Supply, LLC v. Howell Twp.*, 103 F.4th 1186, 1195 (6th Cir. 2024) (same), *en banc pet. denied*, 2024 WL 3434464 (July 8, 2024), *pet. for cert. filed* (U.S. Aug. 16, 2024) (No. 24-178).[3]  Plaintiffs also ignore reasoning from other courts holding that a period of "10 days does not qualify" as a period "so lengthy that it is 'put towards abusive ends' or subject to *Bruen*'s historical framework as a *de facto* prohibition on possession." *McRorey v. Garland*, 99 F.4th 831, 840 (5th Cir. 2024), *en banc pet. denied* (June 24, 2024); *see Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 227 & n.15 (4th Cir. 2024) (en banc) (holding that handgun licensing process was not subject to length-based challenge because "in some cases, the process . . . can take only a few days," which is "far shorter than many of the permissible processing periods cited by the Supreme Court in *Bruen*"), *pet. for cert. filed* (U.S. Sept. 27, 2024) (No. 24-373).

As Defendants explained, the historical record supports this understanding of the Second Amendment's textual scope.  Defs.' XMSJ at 6.  Plaintiffs do not contest any of this history, instead claiming it is irrelevant.  Pls.' Reply at 4-5.  But *Bruen* expressly *approved* lower courts' use of history in determining whether the plain text of the Second Amendment is implicated, holding that this approach "is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history."  597 U.S. at 19.  This follows from the Court's holding that the Second Amendment "codified a *pre-existing* right."  *Id.* at 20 (quoting *Heller*, 554 U.S. at 592).  Indeed, post-*Bruen* courts have held they "can *only* properly apply step one of the *Bruen* framework by looking to the

---

[3] This precedent also belies Plaintiffs' assertion that the Waiting Period Laws implicate the Second Amendment merely because they "impact Plaintiffs' ability to 'keep arms.'"  Pls.' Reply at 4.

5

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

historical scope of the Second Amendment right." *United States v. Price*, 111 F.4th 392, 401 (4th Cir. 2024) (en banc); *see also Oakland Tactical Supply, LLC*, 103 F.4th at 1198-99 (considering historical evidence in holding that challenged ordinance did not regulate conduct covered by Second Amendment's plain text).

### 2. The Waiting Period Laws Are Presumptively Constitutional Commercial Regulations

In addition to falling outside the scope of the Second Amendment's plain text, the Waiting Period Laws are presumptively lawful commercial regulations. *See Silvester*, 843 F.3d at 830 (S. Thomas, J., concurring) ("On its face, California's waiting period law is a condition or qualification on the sale of guns: It imposes a brief delay—to permit compliance with background check requirements and provide a 'cooling off' period—as a prerequisite to acquiring a gun."). Other district courts that have addressed similar waiting period laws agree. *See Ortega v. Lujan Grisham*, 2024 WL 3495314, at *30 (D.N.M. July 22, 2024) ("[T]he Waiting Period Act is a presumptively Constitutional commercial firearm regulation."), *appeal filed*, No. 24-2121 (10th Cir.); *RMGO*, 701 F. Supp. 3d at 1136 (similar).

Plaintiffs rely on a single vacated, out-of-circuit opinion to contest this conclusion, Pls.' Reply at 7-8, but that opinion actually supports Defendants. *Hirschfeld v. BAFTE* explained that "a law's substance, not its form, determines whether it qualifies as a condition on commercial sales." 5 F.4th 407, 416 (4th Cir.), *as amended* (July 15, 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021). And where a regulation operates as a "functional ban," it falls outside the category of presumptively lawful commercial regulations. *Id.* at 416-17. The regulations at issue there—prohibitions on the sale of handguns to those between 18 and 20 years old—operated as a "functional prohibition on buyers" because they "ban[ned] an entire group of adult, law-abiding citizens from purchasing handguns from licensed dealers." *Id.* at 417; *see also id.* ("Those in the restricted age range, however, can do nothing to purchase a handgun from a licensed dealer."). The Waiting Period

6

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

Laws, by contrast, implement no such functional prohibition.  They do not "ban" any otherwise eligible person from purchasing a firearm.

To be sure, if a commercial regulation "meaningfully impairs an individual's ability to access firearms," *B & L Prods.*, 104 F.4th at 119, it may regulate conduct that is presumptively protected by the Second Amendment's plain text—and thus trigger *Bruen*'s second step analysis.  But the Waiting Period Laws impose no such burden.  Defs.' XMSJ at 7-9; *see supra* at pp. 3-5.  Plaintiffs offer no sustained argument to the contrary; they just restate the laws' function and attempt to distinguish the Waiting Period Laws from the laws challenged in *B & L Productions*.  Pls.' Reply at 6-7.  But here, too, Plaintiffs' lone authority supports Defendants.  In *B & L Productions*, the Ninth Circuit explained that while certain absolute prohibitions on particular firearm-related activities—such as an absolute prohibition on purchasing ammunition—could constitute meaningful impairment, minor restrictions on how people can acquire firearms do not.  104 F.4th at 119-20.  And again, Plaintiffs decline to grapple with the precedent all but resolving this question in Defendants' favor—as a facial matter, but also as applied to the Individual Plaintiffs and those Californians who already possess firearms.  *See supra* at pp. 3-5; *see also* Defs.' XMSJ at 7-9.

As a final backstop, Plaintiffs argue that the Waiting Period Laws' status as commercial regulations does not insulate them from the second step of *Bruen*'s framework.  Pls.' Reply at 5-6.  Controlling Ninth Circuit precedent holds precisely the opposite.  In *B & L Productions*, the court concluded that because the laws at issue there were presumptively lawful commercial regulations that did not meaningfully constrain the right to keep and bear arms, the plaintiffs' proposed conduct was not covered by the Second Amendment's plain text—thus resolving the step one inquiry in the state's favor and obviating any need to proceed to step two.  104 F.4th at 117-20; *see also Manney*, 114 F.4th at 1053 (holding that where regulated conduct falls "outside the scope of the Second Amendment's plain text

7

1   . . . our analysis ends here").  This is the same approach laid out in *Bruen*, which

2   conducted its historical-analogical inquiry as an analytically distinct step only after

3   first concluding that the plaintiffs' proposed conduct was covered by the Second

4   Amendment's plain text.  597 U.S. at 31-34.[4]

5       **B.**   **The Waiting Period Laws Are Consistent with the Principles**

6               **That Underpin This Nation's Tradition of Firearms Regulation**

7         **1.**   **The Waiting Period Laws Are Consistent with Historical**
               **Licensing Laws**

8         Plaintiffs confirm they take no issue with the delay inherent in running a

9   background check on firearm purchasers.  Pls.' Reply at 9.  This alone should

10  resolve this case, as Plaintiffs make no argument that a brief, 10-day default period

11  to complete a background check is "abusive."  *Bruen*, 597 U.S. at 38 n.9.  Nor

12  could they, given *Bruen*'s endorsement of shall-issue licensing processes of

13  substantially greater length.  *See id.* at 13 n.1; Ala. Code § 13A-11-75(c) (30-day

14  period); Ohio Rev. Stat. § 2923.125(D)(1) (45-day period); Wash. Rev. Code §

15  9.41.070(1) (30- or 60-day period); *see also Md. Shall Issue, Inc.*, 116 F.4th at 234

16  (Rushing, J., concurring) ("[W]hether the delay is one day or thirty, a person

17  entitled to a license will temporarily be prevented from exercising his rights while

18  he awaits government approval.  Despite this fact, the [*Bruen*] Court was

19  untroubled by a licensing regime requiring advance permission to carry a gun

20  . . . .").  In light of Plaintiffs' agreement that some period to conduct background

21  checks is constitutional, their objections to the historical support for the Waiting

22  Period Laws are perplexing, as these objections would apply just as much to the

23  _____

24       [4] The fact that a different category of presumptively lawful regulations specified in *Heller*—sensitive place restrictions—is subject to *Bruen*'s step two

25  historical analysis does not, as Plaintiffs assert, Pls.' Reply at 5, undermine any of this.  Sensitive place laws necessarily restrict conduct—public carry of firearms—

26  directly protected by the Second Amendment's plain text.  *See Bruen*, 597 U.S. at 32 ("'[B]ear' naturally encompasses public carry.").  By contrast, commercial

27  restrictions like the Waiting Period Laws do not, so long as they do not meaningfully impair an individual's ability to acquire firearms.  *See B & L Prods.*,

28  104 F.4th at 119.

1    background check and licensing laws that *Bruen* said (and Plaintiffs accept) were

2    constitutional.  597 U.S. at 38 n.9.

3          In any event, Plaintiffs' complaints about the historical evidence fail on their

4    own terms.  At bottom, they argue that the Waiting Period Laws are not consistent

5    with the principles undergirding the expansive tradition of licensing and

6    background check laws because they do not function in precisely the same manner

7    as those laws.  But the Second Amendment "permits more than just those

8    regulations identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at

9    1897-98.  And the Court assured that "'state and local experimentation with

10   reasonable firearms regulations'" would "'continue'" following the incorporation of

11   the Second Amendment against the States. *McDonald v. City of Chicago*, 561 U.S.

12   742, 785 (2010) (plurality op.); *see Bruen*, 597 U.S. at 30.  Plaintiffs' purported

13   distinction between the Waiting Period Laws and loyalty oath requirements, Pls.'

14   Reply at 9-10, is thus overstated:  Both serve to allow the government to distinguish

15   between those permitted to keep and bear arms and those not, and both do so by

16   placing an incidental regulatory burden on law-abiding citizens to permit the

17   government to make such distinctions.  Defs.' XMSJ at 11-12.[5]

18         Plaintiffs further discount laws and regulations imposing licensing

19   requirements postdating the founding era.  Pls.' Reply at 10 & n.8.  But in assessing

20   sensitive place restrictions, the Ninth Circuit expressly held that courts "look to the

21   understanding of the right to bear arms *both* at the time of the ratification of the

22   Second Amendment in 1791 *and* at the time of the ratification of the Fourteenth

23   Amendment in 1868." *Wolford v. Lopez*, 116 F.4th 959, 980 (9th Cir. 2024), *en*

24

25

---

26   [5] In fact, the loyalty oath requirements imposed a greater burden than do the
     Waiting Period Laws as they entailed full disarmament, whereas the Waiting Period
27   Laws do not prevent individuals from keeping and bearing those arms they already
     possess and only require purchasers to wait 10 days before taking possession of
28   newly acquired firearms.

9

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

1   *banc pet. pending*.[6]  And it has elsewhere assessed a challenged regulation's

2   consistency with tradition by looking to, among other periods, the mid-19th century

3   and post-Civil War practice.  *See United States v. Perez-Garcia*, 96 F.4th 1166,

4   1188 & 1189 n.17 (9th Cir. 2024), *en banc pet. denied*, 115 F.4th 1002.[7]  Plaintiffs

5   also discount these laws because they were municipal regulations and relatively few

6   in number.  Pls.' Reply at 10-11.  This misdescribes the cited evidence, which

7   includes some dozen nineteenth century regulations including municipal

8   ordinances, state laws, and an act of Congress.  Brady Decl. Ex. 8 (Spitzer Decl. ¶¶

9   40-49), ECF No. 22-2.  In any event, "a small number of laws, even localized laws,

10  can suffice, *if* those laws were viewed as non-controversial."  *Wolford*, 116 F.4th at

11  980.  The rapid, broad spread of these laws, *see generally* Spitzer Decl. ¶¶ 40-51,

12  indicates they were indeed viewed as non-controversial, and Plaintiffs have pointed

13  to no evidence—no judicial decisions, contemporary legal treatises, or even

14  newspaper accounts—to the contrary.  *See Wolford*, 116 F.4th at 981 ("[I]f the

15  constitutionality of historical laws went undisputed in the courts in the Nation's

16  early years, that evidence suggests that the laws were constitutional."); *Bruen*, 597

17  U.S. at 30 (approving certain sensitive place restrictions in part because Court was

18  "aware of no disputes regarding the lawfulness of such prohibitions").

19      Plaintiffs also discount historical laws restricting firearm access by Native

20  Americans and enslaved people.  Pls.' Reply at 11-12.  To be sure, these pre-

21  Fourteenth Amendment laws were "wrong from the beginning and unconstitutional

22  from 1868," but they still "provide insight into how early Americans conceived of

23

24      [6] Plaintiffs' reference to a Supreme Court decision considering the Fifth and
    Sixth Amendments' application against the *federal* government, Pls.' Reply at 10
25  n.8, is thus misplaced.  "It bears emphasizing that the laws at issue here are *state*
    laws.  The Second Amendment applies to the States because of the Fourteenth
26  Amendment's ratification in 1868."  *Wolford*, 116 F.4th at 980.

27      [7] This argument also cannot apply to the surety laws Defendants cited, Defs.'
    XMSJ at 13, as *Bruen* and *Rahimi* considered the same laws.  *See Bruen*, 597 U.S.
28  at 55-59; *Rahimi*, 144 S. Ct. at 1899-1900.

10

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

the right to bear arms embodied in the Second Amendment." *United States v. Williams*, 113 F.4th 637, 656 (6th Cir. 2024); *see also Kanter v. Barr*, 919 F.3d 437, 458 & n.7 (7th Cir. 2019) (Barrett, J., dissenting) (relying on laws disarming Native Americans and enslaved people even though "[i]t should go without saying that such race-based exclusions would be unconstitutional today"), *abrogated on other grounds by Bruen*, 597 U.S. 1.

### 2.    The Waiting Period Laws Are Consistent with Historical Laws Preventing Impulsive Firearm Violence

The Waiting Period Laws are also consistent with the principles underpinning the tradition of firearm regulations meant to prevent impulsive firearm violence. *See* Defs.' XMSJ at 14-23.  "Why and how" historical regulations and the Waiting Period Laws impact the Second Amendment right are "central to this inquiry." *Rahimi*, 144 S. Ct. at 1898.  Conducting that inquiry, the Waiting Period Laws "fit[] neatly within the tradition" these historical regulations represent.  *Id.* at 1901.

One broader point at the outset.  Defendants explained that the Waiting Period Laws impose a smaller burden than did each strain of laws making up this tradition: Whereas the historical regulations were absolute prohibitions on keeping or bearing arms in particular circumstances, the Waiting Period Laws allow the Individual Plaintiffs and the numerous Californians who already own guns to continue keeping and bearing those arms throughout the waiting period.  Defs.' XMSJ at 18-19. Indeed, the Sixth Circuit has recently held that a law prohibiting those under felony indictment from receiving firearms "represents only a slight burden on the Second Amendment right[s]" of "those who already possess one or more firearms."  *Gore*, 2024 WL 4441472, at *5; *see id.* at *4 ("[A]n indicted person who already possesses a firearm may continue to do so—and, therefore, will not be prevented from enjoying the '*central component*' of the Second Amendment right, the right of armed self-defense.").  The Waiting Period Laws' brief period between purchase

11

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

and receipt, at most, imposes an even smaller burden than that.  Plaintiffs have no response to this.  *See generally* Pls.' Reply at 12-14.

Plaintiffs' specific attacks on each set of historical regulations are also unpersuasive.  Start with the intoxication laws.  Plaintiffs assert that the "how" of these laws does not match the "how" of the Waiting Period Laws because intoxication laws burdened only the intoxicated, whereas the Waiting Period Laws burden everyone.  Pls.' Reply at 12.  But "intoxication laws prevented *all* individuals from becoming intoxicated and engaging in the prohibited conduct," not just "those people who would have certainly used a firearm irresponsibly while intoxicated."  *RMGO*, 701 F. Supp. 3d at 1144-45.  Such categorical approaches are permissible.  *See Rahimi*, 144 S. Ct. at 1901.  Moreover, Plaintiffs ignore the laws Defendants cited barring firearms from establishments serving alcohol or restricting the sale of alcohol near militia training without reference to whether the individual bearing the firearm was intoxicated.  Defs.' XMSJ at 14.

Plaintiffs also attempt to distinguish the "whys" of these laws because they address risks of impulsive firearm violence arising from different sources.  Pls.' Reply at 12.  But the Supreme Court has explained that the analogical inquiry looks at whether laws are enacted for "*similar* reasons," not identical ones.  *Rahimi*, 144 S. Ct. at 1898 (emphasis added); *see Bruen*, 597 U.S. at 29 (asking whether historical and modern regulations are "comparably"—not identically—"justified").  Adopting Plaintiffs' approach here would recreate the "law trapped in amber" recently (and roundly) rejected by the Supreme Court.  *Rahimi*, 144 S. Ct. at 1897.  Under the proper analysis, the "whys" are comparable.  "[L]ike past intoxication-related laws, the waiting period works to ensure that individuals in temporarily impulsive states will not make reckless decisions with a firearm.  The only difference . . . is the reason why the individual might make a reckless decision:  one based upon alcohol, and one based upon inflamed passions or fears."  *VFSC*, 2024 WL 3466482, at *26; *see RMGO*, 701 F. Supp. 3d at 1144 (similar).

The Waiting Period Laws are also supported by historical laws prohibiting firearm possession by various categories of individuals deemed dangerous. Defs.' XMSJ at 15, 19. Plaintiffs only address the subset of these laws dealing with mental illness, lumping them in with the intoxication laws just discussed and failing to successfully distinguish them for the same reasons. Pls.' Reply at 12; *see supra* at p. 12. Plaintiffs ignore the historical laws barring firearm possession by the unhoused and those disloyal to the early Republic, both sets of which sought to prevent impulsive firearm violence and did so by imposing absolute bans on gun possession. Defs.' XMSJ at 15, 19. While the Waiting Period Laws also address impulsive firearm violence, they do so in a far less burdensome manner by allowing receipt of a particular firearm in just 10 days.

Plaintiffs also fail to distinguish historical laws preventing minors from purchasing firearms. Plaintiffs acknowledge these laws sought to prevent impulsive firearm violence, Pls.' Reply at 13, which matches precisely the purpose of the Waiting Period Laws, Defs.' XMSJ at 15-16, 18-19. Plaintiffs' off-hand assertion that First Amendment interest-balancing principles require disregarding this historical evidence carries no weight. Pls.' Reply at 13. And Plaintiffs' undeveloped suggestion that these laws are irrelevant because California separately prohibits sales or transfers to those under 21 misunderstands the analogical inquiry. Pls.' Reply at 12-13. Whether California addresses one source of the risk of impulsive firearm violence has no bearing on whether a law addressing *another* source of the risk of impulsive firearm violence is "consistent with the principles that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898.

Next, in discussing surety laws, Plaintiffs ignore the fact these laws imposed an often-months-long restriction on firearm possession, whereas the Waiting Period Laws impose only a brief period before taking possession of a new firearm. Defs.' XMSJ at 16, 19. Plaintiffs instead distinguish surety laws by asserting that they depended on individualized determinations whereas the Waiting Period Laws apply

1  across the board.  Pls.' Reply at 13.  But *Rahimi* was careful not to "suggest that the
2  Second Amendment prohibits the enactment of laws banning the possession of guns
3  by *categories* of persons thought by a legislature to present a special danger of
4  misuse."  144 S. Ct. at 1901 (emphasis added); *see Gore*, 2024 WL 4441472, at *5
5  (rejecting Second Amendment challenge to firearm prohibition that included no
6  "individualized determination of risk" because Congress could "define[], by their
7  circumstances, a category of persons who, in its judgment, present special risks").
8  In any event, "[i]n applying the Second Amendment, we do not isolate each
9  historical precursor and ask if it differs from the challenged regulation in some
10  way."  *Perez-Garcia*, 96 F.4th at 1191.

11      Finally, Defendants explained at length that, although the Waiting Period
12  Laws are distinctly similar to this robust tradition of laws preventing impulsive
13  firearm violence, their historical justification is even more apparent under *Bruen*'s
14  more nuanced approach—applicable here based on technological advances and the
15  unprecedented societal concern of impulsive firearm violence.  Defs.' XMSJ at 19-
16  23.  Plaintiffs drop a solitary footnote on this point, misidentifying the relevant
17  societal concern as "firearm violence" generally instead of impulsive firearm
18  violence.  Pls.' Reply at 14 n.10.  They also fail to address (much less rebut) the
19  substantial evidence Defendants provided that "firearms were not as readily
20  available for purchase and that impulsive gun homicides"—and gun suicides, Defs.'
21  XMSJ at 20-21—"were much less prevalent at the time of the founding and in the
22  century that followed."  *RMGO*, 701 F. Supp. 3d at 1141.  The Waiting Period
23  Laws thus "seek[] to address a problem that the founders could not anticipate,"
24  requiring a more nuanced approach.  *VFSC*, 2024 WL 3466482, at *27.

25  **II.   THE WAITING PERIOD LAWS DO NOT VIOLATE EQUAL PROTECTION**
26      "To state an equal protection claim of any stripe, whatever the level of
27  scrutiny it invites, a plaintiff must show that the defendant treated the plaintiff
28  differently from similarly situated individuals."  *Pimentel v. Dreyfus*, 670 F.3d

14

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

1096, 1106 (9th Cir. 2012) (per curiam).  As Defendants explained, Defs.' XMSJ at 23-24, Plaintiffs have not met and cannot meet their burden of showing they are "'in all relevant aspects alike'" those purchasers falling into any of the 10 exemptions they challenge.  *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011); *accord Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024) (en banc) ("The comparator groups 'need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy . . . .'"), *cert denied*, 2024 WL 4486406 (U.S. Oct. 15, 2024).  Plaintiffs offer a single sentence in response.  Pls.' Reply at 15 ("In all relevant respects, Plaintiffs are in the same position as those individuals in the exempt classes with respect to the Waiting Period Laws.").  This conclusory *ipse dixit* cannot possibly meet their threshold burden.

Even putting aside that shortcoming, Plaintiffs do not address the Ninth Circuit's holding that equal protection challenges based on the right to bear arms are "subsumed in the Second Amendment inquiry" and that where, as here, the Second Amendment claim fails, rational basis applies.  Defs.' XMSJ at 25 (quoting *Pena v. Lindley*, 898 F.3d 969, 986 (9th Cir. 2018), *abrogated on other grounds by Bruen*, 597 U.S. 1).  Plaintiffs do, however, acknowledge that their assertion of strict scrutiny rests on the success of their Second Amendment claim, Pls.' Reply at 14—a claim that, as explained, fails several times over.  *See supra* at pp. 2-14; Defs.' XMSJ at 4-23.  And Plaintiffs do not even attempt to meet their burden under the rational basis standard that actually applies.  Nor could they.  *Cf. Silvester*, 843 F.3d at 827-29 (upholding Waiting Period Laws under intermediate scrutiny).

## CONCLUSION

This Court should grant Defendants' Cross-Motion for Summary Judgment and enter judgment in Defendants' favor.

15

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

Dated:  October 18, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
MARK R. BECKINGTON
PAUL STEIN
Supervising Deputy Attorneys
General


/s/ Sebastian Brady

SEBASTIAN BRADY
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in*
*his official capacity as Attorney*
*General of the State of California,*
*and Defendant Allison Mendoza, in*
*her official capacity as Director of the*
*Bureau of Firearms*

SA2023302579

16

Reply ISO Defs.' XMSJ  (3:23-cv-00793-AGS(AHG))

## CERTIFICATE OF SERVICE

Case Name:   ***Richards, Claire, et al. v. Rob***          Case No.   **3:23-cv-00793-AGS-AHG**
             ***Bonta, et al.***

I hereby certify that on October 18, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **REPLY IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 18, 2024, at San Francisco, California.

| M. Mendiola | | |
|:---:|:---:|:---:|
| Declarant | | Signature |

SA2023302579